## JONATHAN W. PAINE *vs.* CITY OF BROCKTON.

Plymouth.   Oct. 21, 1884. — Feb. 27, 1885.   C. ALLEN & COLBURN, JJ.,
absent.

If a private way has been opened from a public way, and has been dedicated to public use, and has become such a way as is within the Gen. Sts. c. 43, §§ 82, 83, a town is liable for a defect in the public way between the part wrought for public travel and the entrance of the private way, unless it has cautioned the public against entering upon such private way.

TORT for personal injuries occasioned to the plaintiff by a defect in a highway in the defendant city.   Trial in the Superior Court, before *Gardner*, J., who allowed a bill of exceptions, in substance as follows:

It appeared in evidence, that the plaintiff, at the time of the injury complained of, February 23, 1882, was riding in a northerly direction on Main Street in the defendant city, and, in turning therefrom into a place or way called French's Court, leading westerly from Main Street, (which court, place, or way had existed for a period of forty-five or fifty years, and had been known to the plaintiff and frequently used by him for twenty or more years in visiting his brother, who lived on the corner of said place or way and Main Street,) his sleigh came in contact with an alleged defect in Main Street, caused by the cutting of a water-course through the snow and ice in the gutter by the side of the street, and he was thrown out and received the alleged injury.

There was an increase of water on Main Street, caused by a private way some distance from the place of the accident, which had within two years previously to the accident been opened into Main Street.

There was evidence that, at the place where the injury was received, Main Street, between the limits of location, was fifty-six feet wide; that the sidewalk on the westerly side thereof was fourteen and two tenths feet wide, and was covered with concrete; that the distance from the line of the curbstone of said sidewalk to the westerly side of the horse-car track on Main Street was twelve and four tenths feet; and that no part of Main Street was paved, except a space about three feet by

the side of the street. The plaintiff contended that the space between the curbstones of the sidewalk upon the easterly and westerly sides of · Main Street was wholly wrought for public travel close up to the curbstones. The defendant contended that the space by the curbstones was hollowed out and paved as a gutter or water channel to carry off the water, and had not been wrought for public travel. Upon these separate claims the evidence was conflicting.

There was also evidence tending to prove that the place of the defect was in the paved gutter or water channel of Main Street, which gutter or water channel was about three feet wide, and was easterly of and contiguous to the curbstone of the walk on the westerly side of Main Street; and that the curbing of the sidewalk was discontinued across the entrance to said court, place, or way.

The plaintiff offered further evidence tending to show that said court was a public way by prescription; and also evidence, which was uncontroverted, that, prior to the accident, no sign or warning had been put up by the town or city to warn the public that said court was not a public way, but that subsequently to the accident the mayor of the defendant city caused to be put up a sign which read, "Not a public way."

It further appeared, that no one claimed to have a right to close up said court, although one French, the owner of the land over which the right of way existed, testified that the title to the court was in himself.

The judge, among other things, instructed the jury as follows: "If the alleged defect rendered Main Street unsafe, and thereby caused the injury complained of, the defendant city would be liable. If the plaintiff sustained injury by crossing Main Street, for the purpose of entering upon a private way, and his injury was occasioned by a defect within the limits of Main Street, but without the road or street appropriated and used for public travel, the plaintiff cannot recover, provided the defect furnished no ground of complaint against the city in reference to the public travel on Main Street. If the jury find that the alleged defect was within the limits of Main Street, as located, and within that portion of said street used for travel to and from a private way leading to French's house, but not within that part

of Main Street worked for and used and open to travel, they must find for the defendant."

The jury, after having been sent out, returned into court for instructions, and asked whether the fact that no sign or warning had been put up in French's Court by the defendant had anything to do with the liability of the city; to which the judge replied, " No, it has nothing to do with the case, as it is not contended that the injury to the plaintiff occurred within the court or place; " to which the plaintiff excepted.

The jury returned a verdict for the defendant; and the plaintiff alleged exceptions.

*J. V. Beal*, for the plaintiff.

*H. Kingman*, for the defendant.

FIELD, J.    The St. of 1846, *c.* 203, § 1, provides, that "no way heretofore opened and dedicated to the public use and not already become a public way, and no way hereafter opened and dedicated to the public use, shall become chargeable upon any city or town, unless such ways shall be laid out and established by such city or town, in the manner prescribed by the statutes of this Commonwealth."

Section 2 makes it the duty of the mayor and aldermen of cities, and of the selectmen of towns, whenever the public safety demands it, to cause the entrances of such ways into public ways to be closed up, " or, by other sufficient means, to caution the public against entering upon such ways."

Section 3 provides that, if the city or town shall not close up the entrances to such ways, " or give other sufficient notice that the same are dangerous, such city or town . . . . shall be liable for any damages arising from any defects therein, in the same manner as if such ways were duly laid out and established."

This statute was incorporated into the Gen. Sts. *c.* 43, §§ 82, 83, and into the Pub. Sts. *c.* 49, §§ 94, 95.

In *Warner* v. *Holyoke*, 112 Mass. 362, it is said that the provisions of the Gen. Sts. *c.* 43, § 83, "would not authorize the defendants to close a private way leading from the highway into the grounds of an adjoining proprietor, nor make them responsible for its condition."

In *Smith* v. *Wendell*, 7 Cush. 498, where the alleged defect was in a public way near its point of intersection with a private

way, which had been recently opened by a railroad corporation to afford access to one of its stations, it is said that, whenever the way " shall have acquired a different character, and shall by dedication have become a public highway, so far forth as that the railroad corporation will be taken to have lost all control over it as their way, the public duty may devolve upon the town of Wendell of keeping the same, and their own highway in the part leading to it, in safe and convenient repair, or to give the notice required by St. 1846, *c.* 203, § 3."

In the case at bar, the plaintiff offered evidence tending to show that the court was a public way by prescription; and also evidence that " no sign or warning had been put up by the town or city to warn the public that said court was not a public way, but that subsequently to the accident the mayor of the defendant city caused to be put up a sign which read, ' Not a public way.' " It also appeared that no one claimed to have the right to close up the court or way, although one French testified that the title to it was in himself. The jury, after having been sent out, returned into court for instructions, and asked whether the fact " that no sign or warning had been put up . . . . had anything to do with the liability of the city," to which the presiding justice replied, " No, it has nothing to do with the case, as it is not contended that the injury to the plaintiff occurred within the court or place;" to which the plaintiff excepted.

There are private ways, public ways, and ways opened and dedicated to the public use which have not become public ways. There are also private ways laid out under the Pub. Sts. *c.* 49, §§ 65–82, which are in a sense public ways; *Denham* v. *County Commissioners*, 108 Mass. 202; *Flagg* v. *Flagg*, 16 Gray, 175; but the private way intended in these exceptions is not a statutory private way.

In *Oliver* v. *Worcester*, 102 Mass. 489, and in *Sullivan* v. *Boston*, 126 Mass. 540, there is a description of the ways intended by the St. of 1846, *c.* 203, §§ 2, 3. They are ways which have been opened and dedicated to public use by the owner of the land, in which other persons have rights so that he cannot close them, and which are connected with public ways and are apparently themselves public ways, so that travellers would have no means of knowing that they were not legally laid out and kept

in repair as public ways. Of such ways the municipal authorities, when the public safety demands it, must close the entrances into the public ways, or must give the public sufficient caution against entering upon them from the public ways; and, if this is not done, the city or town is liable for damages arising from defects therein, in the same manner as if they had been duly laid out and established. The statute imposes a liability for damages arising from defects in the way, and not from defects not in the way; and it was on this ground apparently that the judge ruled that the failure to put up a sign or warning had nothing to do with the case, as the injury did not occur in French's Court, but on Main Street. The duty to keep Main Street, which was a public highway, in repair, so that it may be reasonably safe and convenient for travellers, is imposed upon the defendant by other provisions of statute. Pub. Sts. c. 52, §§ 1, 18.

It has been held that it is not necessarily the duty of the city or town to keep the whole width of the way safe and convenient for travellers, but only such part of it as is reasonably necessary to accommodate the public travel on the way; and that it is no part of this duty to work the public way so that it may be safe and convenient for travellers who leave it to travel upon a way wholly private which enters into it. *Smith* v. *Wendell, ubi supra*. *Kellogg* v. *Northampton*, 4 Gray, 65. But if one public way enters into another, it is the duty of the city or town to keep the entrances in repair, so that they may be safe and convenient for travellers, because the entrances are a portion of the public way used by travellers. If a person enters his private way into a public way, it is his duty to keep his own way in repair until it reaches that part of the public way which is used by travellers. When a private way has been opened and dedicated to public use, and has become such a way as is within the provisions of the St. of 1846, c. 203, §§ 2, 3, we think it was the intention of the Legislature that the liabilities of cities and towns for damages arising from defects should be the same as if the way had been duly laid out and established, unless, if the public safety demands it, they close the way, or give the public sufficient caution against entering upon it. The statute naturally confined the liability for damages to defects in the ways described in it, because, by other provisions of statute, the public

ways were required to be kept safe and convenient for travellers; but as cities and towns are liable for damages arising from defects in both classes of ways, they must be liable for damages arising from defects in the travelled part of the ways where they unite with each other. This instruction of the court, therefore, did not correctly state the law. If French's Court was such a way, it is within the provisions of the St. of 1846, *c.* 203, §§ 2, 3.

The difficulty is in determining from the exceptions whether this question of law was distinctly presented to the court below. The contention that French's Court had become a public way by prescription, was not a contention that it was such a way as is described in the St. of 1846, *c.* 203, §§ 2, 3. The only description of French's Court found in the exceptions is, that it was "a place or way called French's Court, leading westerly from Main Street, which court, place, or way had existed for a period of forty-five or fifty years, and had been known to the plaintiff and frequently used by him for twenty or more years in visiting his brother, who lived on the corner of said place or way and Main Street;" and "that the curbing of the sidewalk was discontinued across the entrance to said court, place, or way." Whether the whole evidence was sufficient to warrant the jury in finding that French's Court was such a way as is within Pub. Sts. *c.* 49, § 94, is a question not presented, and the whole evidence is not reported.

From the evidence which has been recited, it seems that some attempt was made to bring the case within the St. of 1846, *c.* 203, §§ 2, 3, and this is confirmed by the reason given by the court in its ruling in reply to the question of the jury. On the whole, we think the point is fairly open to the plaintiff. No error appears in the other rulings of the court.

*Exceptions sustained.*